**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
(Greenbelt Division)

| | | |
|---|---|---|
| IN RE: | * | |
| AGILUSFOR, INC. | * | Case No. 10-25699-PM |
| | | (Chapter 7) |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| | * | |
| MICHAEL G. WOLFF, Trustee | | |
| 15245 Shady Grove Road | * | |
| Suite 465, North Lobby | | |
| Rockville, Maryland 20850 | * | |
| | | |
| Plaintiff | * | |
| | | |
| v. | * | Adversary No. 13-_____-PM |
| | | |
| RICHARD KLINE | * | |
| 105 W. 2nd Street | | |
| Frederick, Maryland 21701 | * | |
| | | |
| and | * | |
| | | |
| MARGARET KLINE, individually | * | |
| 105 W. 2nd Street | | |
| Frederick, Maryland 21701 | * | |
| | | |
| and | * | |
| | | |
| MARGARET KLINE, as Trustee of | * | |
| The Frederick Preservation Trust | | |
| 105 W. 2nd Street | * | |
| Frederick, Maryland 21701 | | |
| | * | |
| and | | |
| | * | |
| LEA KLINE ALLEN | | |
| 152 W. Patrick Street | * | |
| Frederick, Maryland 21701-5514 | | |
| | * | |
| and | | |

trustee\agilusfor\complaint

350 URBANA PIKE, LLC                                      *
 c/o Richard Kline, Resident Agent
105 W. Second Street                                      *
Frederick, Maryland 21701
                                                         *
and
                                                         *
URBANA PIKE, INC.
c/o Ralph I. Kline, Resident Agent                       *
P.O. Box 3006
47 South Carroll Street                                  *
Frederick, Maryland 21705
                                                         *
and
                                                         *
HENRY HEWES
515 Madison Avenue                                       *
Suite 5W
New York, New York 10022                                 *

         Defendants                                       *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

COMPLAINT FOR AVOIDANCE AND RECOVERY
OF TRANSFERS, FOR DECLARATORY JUDGMENT, AND FOR
EQUITABLE SUBORDINATION AND EQUITABLE DISALLOWANCE[1]

MICHAEL G. WOLFF (sometimes referred to as the "Plaintiff" or the "Trustee"), Chapter

7 Trustee of the Bankruptcy Estate of Agilusfor, Inc. (the "Debtor"), by his attorneys, JEFFREY M.

ORENSTEIN and GOREN, WOLFF & ORENSTEIN, LLC, files this Complaint against Margaret

Kline ("Margaret"), Richard Kline ("Richard"), Henry Hewes ("Hewes"), Lea Kline Allen ("Lea"),

Margaret Kline, in her capacity as the Trustee of the Frederick Preservation Trust (the "Trust"), 350

Urbana Pike, LLC ("350") and Urbana Pike, Inc. ("Urbana") (hereinafter, the Trust, Urbana and 350

are sometimes collectively referred to as the "Related Entities) (hereinafter Margaret, Richard,

---

[1]      The Defendants named in this adversary proceeding have all previously executed a series
of Tolling Agreements that permitted Plaintiff to file the Complaint at this time.

Hewes, Lea, the Trust, 350 and Urbana are sometimes collectively referred to as "Defendants"). For his Complaint, Plaintiff respectfully represents as follows:

PARTIES AND JURISDICTION

1. This is an adversary proceeding brought pursuant to Rule 7001 of the Bankruptcy Rules.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 510, 544, 548, 549 and 550 as well as and pursuant to 28 U.S.C. §§ 2201, et. seq.,

3. This contested matter is a core proceeding as defined by 28 U.S.C. § 157.

4. On July 13, 2010 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code.

5. By Order entered December 19, 2011, the Debtor's case was converted to a case under Chapter 7 of the United States Bankruptcy Code.

6. Plaintiff was appointed to serve as the Chapter 7 Trustee of the Debtor's Estate.

7. Plaintiff continues to serve as the Chapter 7 Trustee in the Debtor's case.

8. Margaret is an individual who resides in this judicial district.

9. Margaret is Richard's wife.

10. Richard is an individual who resides in this judicial district.

11. Lea is an individual who resides in this judicial district.

12. Lea is Margaret and Richard's daughter.

13.     Hewes is an individual who resides in the state of New York, but who has participated in the Debtor's bankruptcy case in this Court and who has regularly conducted business in the State of Maryland.

14.     The Trust is a Trust that was formed in the State of Maryland for purposes of engaging in transactions in the State of Maryland.

15.     In the course of the administration of the Debtor's bankruptcy case, the Trustee obtained a copy of the Trust's Trust Agreement (the "Trust Agreement") that, in relevant part, reads as follows:

> TRUST AGREEMENT mad this 26th day of January, 2009 by and between HENRY HEWES of New York, New York, as Grantor, and _____ MARGARET M. KLINE of Frederick, Maryland as Trustees.

16.     Like the opening sentence of the Trust Agreement, the Trust Agreement is full of blank spots which appear to have been "whited out" by some person that is not known to the Trustee and for reasons that have not been explained to the Trustee.

17.     350 is a limited liability company that was organized under the laws of the State of Maryland.

18.     At all times relevant to this Complaint, 350 maintained its principal offices at the same address as that of the Debtor, 105 West Second Street, Frederick, Maryland 21701, which address was also Richard's and Margaret's home.

19.     Urbana is a corporation that was incorporated under the laws of the state of Maryland.

FACTUAL BACKGROUND

I.     General Background

20.     Richard and Margaret are the principals of the Debtor.

21.    Notwithstanding that Richard and Margaret are the principals of the Debtor, Hewes was the Debtor's primary strategist, and the person that orchestrated the actions of the Debtor and the Related Entities.

22.    In conjunction with Hewes, Richard and Margaret carried out the plans formulated by Hewes.

II.    Transfers Involving Lea

23.    Pre-Petition, the Debtor made two transfers of its property to Lea.

24.    One transfer was the transfer of a property identified by the Debtor as the 15.5 acre parcel (the "15.5 Acre Property").

25.    The second transfer was the transfer of a property identified by the Debtor as the 1.66 acre parcel (the "1.66 Acre Property").

26.    Both transfers were made for no consideration.

27.    Prior to the transfers, on January 26, 2009, Lea and the Debtor signed a "Nominee Agreement" by which Lea agreed to hold the 15.5 Acre Property and the 1.66 Acre Property as "nominee" for the Debtor with the Debtor retaining "beneficial" ownership of both properties.

28.    Nearly eight months after the transfers, on November 13, 2009, eight months prior to the Petition Date, Richard incurred an obligation to Mid Maryland Motors, LLC ("MMM").

29.    Richard's debt to MMM was evidenced by a Note in favor of MMM.

30.    The Debtor was not a party to, and had no obligation to repay, the loan that Richard obtained from MMM.

31.    Richard's obligations due under the Note were guaranteed by Lea.

32.     In order to support her guaranty, Lea executed an Indemnity Mortgage allowing MMM to place a lien on the 15.5 Acre Property.

33.     The Debtor did not authorize Lea to use the 15.5 Acre Property as collateral for the obligation due to MMM.

34.     On August 24, 2011, Lea, without the authority of the Debtor, sold the 15.5 Acre Property to Laurel Sand & Gravel, Inc. for the um of $175,000.00 (the "15.5 Sale").

35.     From the proceeds of the 15.5 Sale, $114,358.19 was paid to MMM in satisfaction of Richard's obligation to MMM and in satisfaction of Lea's guaranty obligation to MMM.

36.     After the payment of the $114,358.19 to MMM and the other usual and customary costs of sale relating to the 15.5 Sale, proceeds of $49,067.68 remained and were delivered to Lea.

37.     Post-conversion, upon learning of the sale, the Trustee made demand upon Lea for the turnover of the $49,067.68 and Lea delivered those funds to the Trustee.

38.     Legal title to the 1.66 Acre Property presently remains in Lea's name.

III.     The Sale of the Debtor's Interest in Urbana

39.     Prior to March of 2010, the Debtor owned 100% of the issued and outstanding stock of Urbana (the "Urbana Stock").

40.     Hewes was identified as the Vice-President of Urbana.

41.     Hewes, in cooperation of Richard and Margaret, controlled the activities of Urbana.

42.     In March 2010, four months prior to the Petition Date, the Debtor transferred 100% of the Urbana Stock to the Trust.

43. Although the Trust purportedly agreed to pay the Debtor the sum of $1,000,000.00 for the Debtor's Urbana Stock, the Trust only paid the Debtor $1.00 in cash and delivered the Debtor an unsecured Promissory Note in the principal amount of $999,999.00 payable on April 1, 2020.

44. Upon information and belief, the Trust had no significant assets other than the Urbana stock an no ability to repay the amounts due under the promissory Note.

45. Hewes, in cooperation of Richard and Margaret, controlled the activities of the Trust.

IV.   Transfer of the Urbana Property

46. Prior to the Debtor's transfer of its interest in the Urbana Stock to the Trust, Urbana owned commercial property located at 5601 Urbana Pike Frederick, Maryland (the "Urbana Property"). Upon information and belief, at the time of the Debtor's transfer of the Urbana Stock to the Trust, the value of the Urbana property exceeded any encumbrances on the Urbana Property by more than $1,000,000.00.

47. Prior to the Debtor's transfer of its interest in Urbana to the Trust, Hewes had been negotiating with CarMax Auto Superstores, Inc. ("Carmax") for Carmax to purchase the Urbana Property.

48. On April 26, 2011, Urbana transferred the Urbana Property to 350.

49. Hewes, in cooperation of Richard and Margaret, controlled the activities of 350.

50. The transfer of the Urbana Property from Urbana to 350 was made for no consideration.

51. Prior to the transfer, Carmax had made an offer to purchase the Urbana Property from Urbana.

52. On July 11, 2011, less than four months after the transfer of the Urbana Property to 350, on July 11, 2011, 350 LLC executed a Deed by which the Urbana Property was transferred to Carmax for the sum of $5,800,000 (the "Carmax Transaction").

53. Prior to the Debtor's transfer of the Urbana Stock, and Urbana's transfer of the Urbana Property, the Debtor had a direct equity stake in the Urbana Property by virtue of Urbana's ownership of the Urbana Property and as a result of the Debtor's transfer of the Urbana Stock and Urban's transfer of the Urban Property, the Debtor's equity in the property was wiped out.

54. Hewes arranged the pre-petition transfer of the Urbana Stock, the post-petition transfer of the Urbana Property from Urbana to 350 and the post-petition transfer of the Urbana Property from 350 to Carmax and, upon information and belief, Hewes was paid for his services in divesting the Debtor of its equity in the Urbana Property.

55. Prior to divesting the Debtor of its interest in the Urbana Property, Hewes arranged for the Debtor to file its Bankruptcy Petition through an attorney that worked in the same New York office building as Hewes.

V.   The Acquisition of the Secured Claims Against the Debtor

56. At the time of the Carmax Transaction, the Urbana Property was encumbered by a lien or liens in favor of Branch Banking and Trust Company ("BB&T").

57. BB&T was a creditor of the Debtor by, among other things, certain Confess Judgments that were entered in the Circuit Court for Frederick County against the Debtor and certain insiders of the Debtor including Richard, Margaret, Urbana, Superior Plus, LLC, Glotren, LLC, Mark II of Frederick County, LLC, John & Harry, Inc. in the following cases: 10-C-10-001552, 10-C-10-

001622, an 10-C-10-002107. (Hereinafter, the obligations of the Debtor and the other parties listed in this Paragraph are collectively referred to as the "BB&T Claims.").

58.     As a result of the BB&T Claims, BB&T had liens on all or substantially all of the Debtor's real property.

59.     Fifteen days after the execution of the Carmax Deed, BB&T entered into a contract with Urbana by which BB&T sold the BB&T Claims, and all rights associated with the BB&T Claims, to 350.

60.     350 paid BB&T for its acquisition of the BB&T Claims using the proceeds from the Urbana Property to Carmax.

61.     Upon information and belief, 350's purchase of the BB&T Claims was arranged by Hewes with he cooperation of Richard and Margaret.

62.     But for the pre-petition transfer of the Urbana Stock to the Trust and the post-petition transfer of the Urbana Property from Urbana to 350, the proceeds from the sale of the Urbana Property would have provided value to the Debtor and the Debtor, not 350, would have acquired the BB&T Claims.

63.     Upon acquiring the BB&T Claims, the Debtor would have owned all or the majority of its real property free and clear of liens.

64.     As a result of the transfers, 350 has asserted adversarial rights against the Debtor's property and estate.

COUNT I
Avoidance of Fraudulent Conveyance
11 U.S.C. § 548
(The 1.66 Acre Property - Lea)

65.     Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66.     But for the transfer of the 1.66 Acre Property to Lea, the 1.66 Acre Property would have been Property of the Debtor's Estate.

67.     The transfer of the Debtor's interest in the 1.66 Acre Property to Lea was a transfer within the meaning of 11 U.S.C. § 101(54).

68.     The Debtor transferred the 1.66 Acre Property within two years of the Petition Date.

69.     The Debtor transferred the 1.66 Acre Property with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became indebted.

70.     The Debtor received less than a reasonably equivalent value in exchange for the transfer of the 1.66 Acre Property within the meaning of 11 U.S.C § 548(a)(1)(B)(I).

71.      The Debtor was insolvent on the date of the transfer of the 1.66 Acre Property or became insolvent as a result of the transfer.

72.     The transfer of the 1.66 Acre Property to Lea was a fraudulent transfer within the meaning of 11 U.S.C. § 548(a)(1).

WHEREFORE, the Plaintiff demands the following relief:

A.      That this Court enter a judgment avoiding the transfer of the Debtor's interest in the 1.66 Acre Property to Lea; and

B.      For such other and further relief as the nature of this cause may require.

## COUNT II
### Turnover of Avoided Fraudulent Conveyance
### 11 U.S.C. § 550
(The 1.66 Acre Property - Lea)

73.     Plaintiff realleges and incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74.     Lea was the initial transferee of the transfer of the Debtor's interest in the 1.66 Acre Property.

WHEREFORE, the Plaintiff demands the following relief:

A.      That this Court enter a judgment against Lea and in favor of the Plaintiff allowing the Plaintiff to recover the 1.66 Acre Property or the value of the 1.66 Acre Property; and

B.      For such other and further relief as the nature of this cause may require.

## COUNT III
### Avoidance of Fraudulent Conveyance
### 11 U.S.C. § 548
(The 15.5 Acre Property and its Proceeds - Lea and Richard)

75.     Plaintiff realleges and incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76.     But for the transfer of the 15.5 Acre Property to Lea, the Property would have been Property of the Debtor's Estate.

77.     The transfer of the Debtor's interest in the 15.5 Acre Property to Lea was a transfer within the meaning of 11 U.S.C. § 101(54).

78.     The Debtor transferred the 15.5 Acre Property within two years of the Petition Date.

79.     The Debtor transferred the 15.5 Acre Property with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted.

trustee\agilusfor\complaint                         11

80.     The Debtor received less than a reasonably equivalent value in exchange for the transfer of the 15.5 Acre Property within the meaning of 11 U.S.C § 548(a)(1)(B)(I).

81.      The Debtor was insolvent on the date of the transfer of the 15.5 Acre Property or became insolvent as a result of the transfer.

82.     The transfer of the 15.5 Acre Property to Lea was a fraudulent transfer within the meaning of 11 U.S.C. § 548(a)(1).

83.     But for the transfer of the 15.5 Acre Property to Lea, the proceeds from the Sale of the 15.5 Acre Property to Laurel Sand & Gravel would have been property of the Debtor's estate.

84.     Upon Lea's sale of the 15.5 Acre Property, the $114,358.19 that was obtained from the sale and paid to MMM to satisfy the Debt of Richard and the guaranty of Lea (the "MMM Proceeds") would have been property of the Debtor's estate.

85.     The Debtor was not obligated to MMM and had no obligation to use the proceeds from the sale of its property to make any payments to MMM.

86.     The transfer of the Debtor's interest in the MMM Proceeds was a transfer within the meaning of 11 U.S.C. § 101(54).

87.     The transfer of the MMM Proceeds was made within two years of the Petition Date.

88.     The transfer of the MMM Proceeds was made with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted.

89.     The Debtor received less than a reasonably equivalent value in exchange for the transfer of the MMM Proceeds within the meaning of 11 U.S.C § 548(a)(1)(B)(I).

90.      The Debtor was insolvent on the date of the transfer of the MMM Proceeds or became insolvent as a result of the transfer.

trustee\agilusfor\complaint                    12

91.     The transfer of the MMM Proceeds was a fraudulent transfer within the meaning of 11 U.S.C. § 548(a)(1).

WHEREFORE, the Plaintiff demands the following relief:

A.     That this Court enter a judgment avoiding the transfer of the Debtor's interest in the 15.5 Acre Property to Lea;

B.     That this Court enter a judgment avoiding the transfer of the Debtor's interest in the MMM Proceeds; and

C.     For such other and further relief as the nature of this cause may require.

COUNT IV
Turnover of Avoided Fraudulent Conveyance
11 U.S.C. § 550
(The 15.5 Acre Property and its Proceeds - Lea and Richard)

92.     Plaintiff realleges and incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

93.     Lea was the initial transferee of the transfer of the Debtor's interest in the 15.5 Acre Property.

94.     Lea was the initial transferee of the transfer of the Debtor's interest in the MMM Proceeds.

95.     Because the MMM Proceeds satisfied the obligations that Lea and Richard owed to MMM, Lea and Richard are the entities for whose benefit the transfer of the MMM Proceeds was made.

WHEREFORE, the Plaintiff demands the following relief:

A.     That this Court enter a judgment, jointly and severally, against Lea and Richard and in favor of the Plaintiff in the amount of $114,358.19, plus pre-judgment interest at the applicable

trustee\agilusfor\complaint                    13

federal rate from August 24, 2011 until the date of the entry of the judgment, plus post-judgment interest at the applicable federal rate; and

B.      For such other and further relief as the nature of this cause may require.

COUNT V
Avoidance of Fraudulent Conveyance
11 U.S.C. § 548
(The Urbana Stock - The Trust)

96.      Plaintiff realleges and incorporates by reference paragraphs 1 through 95 as if fully set forth herein.

97.      As the 100% owner of the Urbana Stock, the Debtor had an equitable interest in all of the Property owned by Urbana including, but not limited to, the Urbana Property.

98.      But for the transfer of the Urbana Stock to the Trust, the Urbana Stock would have been Property of the Debtor's Estate.

99.      Likewise, but for the transfer of the Urbana Property from Urbana to 350, the Urbana Property would have been Property of the Debtor's Estate.

100.      The transfer of the Debtor's interest in the Urbana Stock to the Trust was a transfer within the meaning of 11 U.S.C. § 101(54).

101.      The Debtor transferred the Urbana Stock within two years of the Petition Date.

102.      The Debtor transferred the Urbana Stock with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted.

103.      The Debtor received less than a reasonably equivalent value in exchange for the transfer of the Urbana Stock within the meaning of 11 U.S.C § 548(a)(1)(B)(I).

104.      The Debtor was insolvent on the date of the transfer of the Urbana Stock or became insolvent as a result of the transfer.

105.    The transfer of the Urbana Stock to the Trust was a fraudulent transfer within the meaning of 11 U.S.C. § 548(a)(1).

106.    Based upon the value of the Urbana Property at the time of the transfer, the Urbana Stock had a value of in excess of $1,000,000.00 at the time of the transfer.

WHEREFORE, the Plaintiff demands the following relief:

A.      That this Court enter a judgment avoiding the transfer of the Debtor's interest in the Urbana Stock to the Trust; and

B.      For such other and further relief as the nature of this cause may require.

COUNT VI
Turnover of Avoided Fraudulent Conveyance
11 U.S.C. § 550
(The Urbana Stock - The Trust and 350)

107.    Plaintiff realleges and incorporates by reference paragraphs 1 through 106 as if fully set forth herein.

108.    The Trust was the initial transferee of the transfer of the Debtor's interest in the Urbana Stock.

109.    The Trust acquired the Urbana Stock so that it could transfer the Urbana Property to 350.

110.    The Trust acquired the Urbana Stock so that 350 could sell the Urbana Property and use the proceeds to acquire the BB&T Claims.

111.    350 was the entity for whose benefit the transfer of the Urbana Stock was made.

WHEREFORE, the Plaintiff demands the following relief:

A.      That this Court enter a judgment, jointly and severally, against the Trust and 350 for such amounts as Plaintiff may prove at trial; and

B.      For such other and further relief as the nature of this cause may require.

## COUNT VII
### Declaratory Judgment
(The BB&T Claims - The Related Entities)

112.    Plaintiff realleges and incorporates by reference paragraphs 1 through 111 as if fully set forth herein.

113.    An actual controversy exists among the Trustee and the Related Parties.

114.    The Trustee asserts that, for all of the reasons set forth in this Complaint, the BB&T Claims were purchased with funds that should have been the Debtor's funds and, for that reason, are held in constructive trust for the benefit of the Debtor's estate.

115.    The Related Parties, and especially 350, assert that the Debtor's estate has no interest in the BB&T Claims.

116.    A declaratory judgment will resolve the uncertainties of the parties with respect to whether the Debtor's estate has any interest in the BB&T Claims.

117.    Plaintiff is entitled to a Declaratory Judgment, pursuant to the Declaratory Judgment Act 28 U.S.C. §§ 2201, et. seq., finding that the BB&T Claims are property of the Debtor's estate, that the BB&T claims are held in constructive trust for the benefit of the Debtor's estate, and that the Related Entities have no equitable interest in the BB&T Claims.

WHEREFORE, Plaintiff demands the following relief:

A.      That this Court declare, adjudge, and decree that the BB&T Claims are property of the Debtor's estate, that the BB&T claims are held in constructive trust for the benefit of the Debtor's estate, and that the Related Entities have no equitable interest in the BB&T Claims; and

B.      For such other and further relief as the nature of this cause may require.

<u>COUNT VIII</u>
<u>Avoidance of Post-Petition Transfers and Accounting</u>
<u>11 U.S.C. § 549</u>
(Defendants)

118.    Plaintiff realleges and incorporates by reference paragraphs 1 through 117 as if fully set forth herein.

119.    Despite demand, the trustee has been unable to obtain a full and complete accounting from the Debtor of all of its financial transactions during the course of its bankruptcy case.

120.    For this reason, the Trustee believes, and therefore asserts, that the Debtor made unauthorized transfers in the course of its bankruptcy case.

WHEREFORE, Plaintiff demands the following relief:

A.    That this Court Order to the Defendants to disclose the amounts that they have received from the Debtor or that were paid on their behalf or for their benefit by the Debtor during the course of the Debtor's bankruptcy case and the basis for each such receipt;

B.    That the Court Order Margaret and Richard, as the principals of the Debtor, to account for all amounts that the Debtor has paid to, or for the benefit of, the Defendants in the course of the Debtor's bankruptcy case;

C.    That Judgment be entered against the Defendants and in favor of Plaintiff avoiding each of the unauthorized post-petition transfers; and

D.    For such other and further relief as the nature of this cause may require.

COUNT IX
Turnover of Avoided Fraudulent Conveyance
11 U.S.C. § 550
(Avoided Post-Petition Transfers - Defendants)

121. Plaintiff realleges and incorporates by reference paragraphs 1 through 120 as if fully set forth herein.

122. The Defendants that received the unauthorized post-petition transfers were the initial transferees of those transfers.

123. The Defendants that had amounts paid on their behalf or for their benefit were entities for whose benefit those transfers were made.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment against each of the Defendants for such amounts as Plaintiff may prove at trial; and

B. For such other and further relief as the nature of this cause may require.

COUNT X
Civil Conspiracy
(Defendants)

124. Plaintiff realleges and incorporates by reference paragraphs 1 through 123 as if fully set forth herein.

125. The Debtor and the Defendants devised a plan whereby they could transfer the Debtor's funds and/or property for the benefit of the Defendants individually and as a group, in order to keep those assets away from the Debtor's creditors and in order to personally benefit themselves.

126. In furtherance of their plan, the Debtor and Defendants made arrangements for the 1.66 Acre Property, the 15.5 Acre Property, the Urbana Stock, the Urbana Property and other cash and non-cash items to be transferred out of the reach of the Debtor and its creditors.

127.    In furtherance of their plan, the Debtor and Defendants made arrangements for the BB&T Claims to be obtained using the Debtor's funds so that the Debtor's property would be further protected by allowing them to hold liens on the Debtor's property.

128.    The Plan was carried out in the manner described in detail above.

129.    Once the plan was put in place and had begun, Defendants caused the Debtor to file its bankruptcy case to further hinder and delay the Debtor's creditors from obtaining satisfactions of their debts.

130.    The conspiratorial scheme and all of the actions undertaken by the Defendants were designed and undertaken willfully and intentionally.

131.    As a result of the actions of the Defendants, the Trustee and the Debtor's estate were divested of the funds they would have had available to satisfy the claims of the Debtor's creditors.

132.    As a result of the actions of the Defendants, the Debtor's assets were subjected to liens that, but for the actions of Defendant, would have been released or satisfied.

133.    As a result of the actions of the Defendants, the Debtor's creditors have been deprived of payment on account of their claims.

134.    The actions of the Defendants have caused the dissipation of the assets of the Debtor's estate.

WHEREFORE, Plaintiff prays that this Court grant Plaintiff the following relief:

A.    For such amounts as Plaintiff may prove at trial; and

B.    For such other and further relief as the nature of this cause may require.

## COUNT XI
### (Equitable Subordination pursuant to Section 510(c)(1) & (2))
### (Defendants)

135.     Plaintiff realleges and incorporates by reference paragraphs 1 through 134 as if fully set forth herein.

136.     Through the actions of Defendants, and under the direction Richard, Margaret and Hewes, the Debtor and Defendants have engaged in inequitable conduct as it relates to the Debtor.

137.     As the management of the Debtor and as the people that controlled the activities of the Debtor and the Related Entities, Richard, Margaret and Hewes owed the Debtor a duty of loyalty.

138.     As insiders of the Debtor, Defendants all were obligated to refrain from self dealing as their acts related to the interests of the Debtor.

139.     Defendants' conduct has caused injury to the Debtor and the Debtor's creditors.

140.     Defendants' conduct has conferred an unfair advantage upon Defendants by enabling them to acquire for themselves, and at the expense of the Debtor and its creditors, property and rights that belonged to the Debtor.

141.     The relief sought by this cause of action is consistent with the provisions of the Bankruptcy Code.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants:

A.     Subordinating Defendants' claims and interests to all other claims against the Debtor;

B.     Transferring all liens held by Defendants to the Debtor's estate; and

C.     Granting such other relief as the nature of this cause requires.

COUNT XII
(Equitable Disallowance)
(Defendants)

142.     Plaintiff realleges and incorporates by reference paragraphs 1 through 141 as if fully set forth herein.

143.     Defendants have engaged in the type of conduct prohibited by Pepper v. Litton, 308 U.S. 295 (1939) and its progeny.

144.     Defendants' conduct has harmed creditors of the Debtor, in the way prohibited by Pepper v. Litton.

145.     As a result of their acts and conduct, Defendants' claims should be equitably disallowed pursuant to the doctrine established in Pepper v. Litton.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants:

A.     Disallowing Defendants' claims; and

B.     Granting such other and further relief as the nature of this cause may require.

Respectfully submitted,


 \s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#07512)
Goren, Wolff & Orenstein, LLC
Shady Grove Plaza
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 984-6266
jorenstein@gwolaw.com

Attorneys for Plaintiff

trustee\agilusfor\complaint                    21